# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YER VUE,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant.<br>_____/ | Case No. 1:25-cv-00567-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Yer Vue ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   FACTUAL BACKGROUND

On August 17, 2021, Plaintiff filed a claim for SSI payments, alleging she became disabled on June 1, 2018, due to neck pain, right arm pain, right shoulder pain, right leg pain, depression, and anxiety. (Administrative Record ("AR") 15, 99, 115, 289–98.) Plaintiff has since amended her alleged onset date to August 17, 2021. (AR 15, 61, 405.)

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

Plaintiff was born in 1973 and was 48 years old on the date the application was filed. (AR 25, 98, 114.) She has a marginal education and previously worked as a home attendant. (AR 25, 50, 320.)

**A.     Relevant Evidence of Record[2]**

In February 2021, Plaintiff presented for a mental health reassessment. (AR 552–54.) She complained of "depression, poor sleep due to nightmares, and anxiety." (AR 554.) Upon examination, Plaintiff was noted to have "moderate to severe" depression and "moderate problems" with "traumatic stress" and "relationships." (AR 553.) She was diagnosed with recurrent and severe major depression disorder and posttraumatic stress disorder with dissociative symptoms. (AR 550, 554.) Approximately one year later, Plaintiff's daily depressive symptoms of "sadness, tearfulness, [and] helplessness" were documented. (AR 548.)

Plaintiff presented for a psychiatric evaluation by Michael Thao, M.D., in June 2022. (AR 546–47.) She reported feelings of worthlessness and hopelessness, poor sleep, poor energy, and intrusive thoughts. (AR 546.) Upon evaluation, her mood was noted as fatigued, restricted, sad, and expressing loss of pleasure. (AR 547.) Dr. Thao found her to have a "sad expression" and "restricted affect." (AR 547.) She was assessed with recurrent moderate depressive disorder and prescribed Sertraline. (AR 547.)

The next month, Plaintiff attended a follow up appointment with Dr. Thao. (AR 545.) She reported "thus far, medication is fine" but was "[u]nsure if it is helping." (AR 545.) Dr. Thao noted that Plaintiff "seemed more hopeful" but her mood was "depressed" and her affect "restricted." (AR 545.)

Dr. Thao completed a mental residual functional capacity questionnaire in August 2022, concluding that Plaintiff's recurrent and severe major depressive disorder and her chronic posttraumatic stress disorder "[p]recludes performance for 15% or more of an 8-hour workday (15%=72 minutes)" in her ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out short and simple instructions; maintain attention and

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to change in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (AR 599–601.) Dr. Thao opined Plaintiff would be unable to complete an eight-hour workday for more than five days per month and would have more than five unplanned absences per month. (AR 601.)

In November 2022, Plaintiff reported to Dr. Thao at a follow up appointment that the medication was "helping," and she wished to continue it. (AR 688.) Her mood was again noted as "depressed" and her affect "restricted." (AR 688.) Plaintiff's mental status examination in April 2023 was as before, and she reported that she is "tolerating the medication well" and that it "has helped with mood." (AR 687.)

Plaintiff presented for a follow up appointment with Dr. Thao in August 2023, at which she reported being "more down, tearful" following an automobile accident. (AR 685.) She reported continuing with her medication, which was "helpful." (AR 685.) Upon examination, Dr. Thao found Plaintiff "very slow," "fatigued," and appearing tired, with slow and soft speech, depressed mood, blunted affect, and "sad/tired" expression. (AR 685.)

In October 2023, Dr. Thao completed a mental residual functional capacity questionnaire, which reiterated the same limitations as set forth in the August 2022 opinion. (AR 657–59.) That same month, Plaintiff reported continuing to "struggle with pain, depression, and poor sleep." (AR 684.) Her medication was noted as "maybe helping mildly only." (AR 684.) Dr. Thao's examination indicated Plaintiff was "very slow," "fatigued," and appearing tired, with slow and soft speech, depressed mood, blunted affect, and "sad/tired" expression. (AR 684.) She was again

assessed with moderate and recurrently depressive disorder. (AR 684.)

Dr. Thao completed another mental residual functional capacity questionnaire in February 2024, concluding Plaintiff would have "preclude[d] performance for 15% or more of an 8-hour workday (15%=72 minutes)" in the following abilities: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goals or make plans independently of others. (AR 688–91.) Dr. Thao opined Plaintiff would be unable to complete an eight-hour workday for more than 15 days per month and would have more than 15 unplanned absences per month. (AR 691.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for SSI initially on April 18, 2022, and again on reconsideration on January 5, 2023. (AR 15, 135–39, 147–52.) Consequently, Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 153–61, 180–213.) At the hearing on March 4, 2024, Plaintiff appeared with counsel and an interpreter and testified before an ALJ as to her alleged disabling conditions. (AR 55–75.) A Vocational Expert ("VE") also testified at the hearing. (AR 75–80.)

**C.     The ALJ's Decision**

In a decision dated May 1, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–27.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 18–27.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since August 17, 2021, the application date (step one). (AR 18.) At step two, the ALJ found Plaintiff's following impairments to be severe: diabetes mellitus, anxiety disorder, chronic pain syndrome, major depressive disorder, post-traumatic stress disorder, and migraine. (AR 18–19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19–21.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a range of light work as defined in 20 CFR [§] 416.967(b). Specifically, [Plaintiff] is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently. She is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is frequently able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. She is able to engage in occasional overhead reaching with the right upper extremity. She is able to perform simple, routine, and repetitive tasks in a work environment free of production-rate pace requirements, involving only simple work-related decisions and routine workplace changes.

(AR 21–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but, given her RFC, she could perform a significant number of jobs in the national economy (step five). (AR 25–27.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 77–80.) The VE testified that a person with the RFC specified above could perform the jobs of cleaner, bench assembler, and sub-assembler. (AR 77–78.) The ALJ ultimately concluded Plaintiff was not disabled since August 17, 2021, the date the application was filed. (AR 27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

March 14, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "An error is harmless only if it is 'inconsequential to the

ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.  DISCUSSION

Plaintiff asserts the ALJ erred in the consideration of the persuasiveness of treating psychiatrist Dr. Thao's opinions and failed to articulate clear and convincing reasons for rejecting her subjective-symptom testimony. (Docs. 17, 20.) The Commissioner contends that the ALJ properly considered Dr. Thao's opinions, and substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms. (Doc. 19.)

Because the Court finds that further proceedings are required regarding the opinions of Dr. Thao, as explained below, the Court does not reach the other allegation of error.[4]

**A.  Legal Standard**

Plaintiff's claim for SSI is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on

---

[4] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

> account of their relationship with the claimant. Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the

discussions required by 20 C.F.R. § 416.920c.  *See* 20 C.F.R. § 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Thao's opinions.

**B.   Analysis**

The ALJ determined that Dr. Thao's opinions were "unpersuasive" because they are "inconsistent and unsupported by the longitudinal objective evidence" and "also inconsistent and unsupported by his own examination findings, which show generally unremarkable mental status examinations, conservative treatment, and greater functional abilities than alleged." (AR 32.) The Court concludes that this evaluation of Dr. Thao's opinions is deficient because the ALJ did not adequately discuss the consistency factor and lacked substantial evidence for their supportability analysis. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence"). Although "the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." *Shannon B. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:21-cv-01144-HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence), and *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").)

   1.   <u>Consistency</u>

Taking the consistency factor first, the ALJ erred because they failed to demonstrate how Dr. Thao's opinions are not "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2). As discussed above, the ALJ must explain how it considered both supportability <u>and</u> consistency when evaluating the persuasiveness of a medical opinion. *See Woods*, 32 F.4th at 792; *see also Hiten v. Kijakazi*, No. 1:22-cv-00473-JLT-BAM,

2023 WL 5806452, at *5–6 (E.D. Cal. Sept. 7, 2023) (collecting cases noting the ALJ must explain how both supportability and consistency factors were considered in determining the persuasiveness of an opinion). Here, the ALJ simply states that Dr. Thao's opinions are "inconsistent and unsupported by the longitudinal objective evidence," but does not describe how, or elaborate as to what "longitudinal objective evidence" undermines those opinions. This is error. *See Beltran v. Kijakazi*, No. 1:21-cv-00603-JLT-BAM, 2023 WL 6164105, at *5 (E.D. Cal. Sept. 21, 2023) (finding that the ALJ did not "clearly address the consistency factor" because they did not "explain the extent to which the limitations identified by [the opining physician] are inconsistent with other evidence in the record, including the opinions from other medical sources and nonmedical evidence."); *see also Rios v. O'Malley*, No. 1:22-cv1164-HBK, 2024 WL 280602, at *5 (E.D. Cal. Jan. 25, 2024) (remanding when ALJ did not "provide the requisite explanation" regarding consistency).

Defendant does not dispute that the ALJ's discussion of Dr. Thao's opinions omits any citation to the "longitudinal objective evidence" on which the ALJ relies to find inconsistency. Instead, they argue that the ALJ's analysis of the consistency factor was "sufficiently linked" to the ALJ's "earlier discussion" of the evidence in the opinion "such that the ALJ's reasoning can be discerned." (Doc. 19 at 10 (citing *Record v. Kijakazi*, No. 1:22-CV-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023)).) However, even were the Court to consider it, this "earlier discussion" of the longitudinal objective evidence cannot form the basis of the ALJ's consistency analysis because it is not an accurate summary of that evidence. The Ninth Circuit has emphasized that an "ALJ [i]s not permitted to 'cherry pick' from . . . mixed results to support a denial of benefits." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)); *accord Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) ("To engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis.") But that is what the ALJ did here.

The ALJ characterized the evidence as "generally . . . unremarkable mental status examinations . . . [] deni[al]s [of] suicidal ideation . . . [and] she continues to report improvement in mood." (AR 23 (citing AR 459–70, 478–97, 504–43, 545–98, 684–88, 693–740).) But several of

the treatment records cited by the ALJ document findings and observations that are remarkably abnormal, indicate suicidal ideation, and demonstrate reports of a worsening of mood symptoms, contrary to the ALJ's characterization and, more importantly, that tend to be consistent with Dr. Thao's opined limitations.[5] (*See* AR 463 (psychiatric examination showing "depression"); AR 538, 542 (consultative psychiatric examination wherein Plaintiff reports she has "suicide ideation"); AR 545, 547, 687, 688 (finding mood "depressed" and affect "restricted"); AR 547 (noting mood as fatigued, restricted, sad, and expressing loss of pleasure); AR 548 (documenting daily depressive symptoms of "sadness, tearfulness, [and] helplessness"); AR 550, 554, 547, 684 (noting diagnoses of recurrent and moderate to severe major depression disorder); AR 684, 685 (Plaintiff reporting that she "continues to struggle with pain, depression, and poor sleep" and she "has been more down, tearful" with a "worsened . . . mood"; finding Plaintiff was "very slow," "fatigued," and appearing tired, with slow and soft speech, depressed mood, blunted affect, and "sad/tired" expression); AR 693–704 (depression screening showing severe major depression disorder); AR 711, 714, 720, 734, 737, 738 (noting Plaintiff "has depression/anxiety/insomnia.").)

### 2. Supportability

The ALJ's evaluation of the supportability factor is similarly deficient. The ALJ concluded that Dr. Thao's opinions were "inconsistent and unsupported by his own examination findings, which show generally unremarkable mental status examinations, conservative treatment, and greater functional abilities than alleged . . . and [Plaintiff] continues to report improvement in mood." (AR 24 (citing AR 545–54, 684–88).) This is erroneous because the ALJ relies on the same mischaracterized evidence discussed above. *See Woods*, 32 F.4th at 792; *Attmore*, 827 F.3d at 877. As set forth above, rather than being "generally unremarkable," Dr. Thao's examination findings tend to support his opined limitations, showing Plaintiff's "depressed" mood and "restricted" affect (AR 545, 547, 687, 688), daily depressive symptoms of "sadness, tearfulness, [and] helplessness" (AR 548), diagnoses of recurrent and moderate to severe major depression disorder (AR 550, 554,

---

[5] Moreover many, if not most, of the "mental status examinations" cited by the ALJ were cursory, as they were conducted during clinic visits to treat physical—not mental—ailments. (*See* AR 465–69, 478–82, 504–08 (chronic lower back pain); AR 483–95, 509–37, 555–68, 580–98, 721–23, 729–31 (back pain and right shoulder pain); AR 569–74 (back pain, shoulder pain, and diabetes); AR 575–80 (back pain, shoulder pain, diabetes, and high blood pressure); AR 705–708 (lab results and medication refills).)

547, 684), and slow and soft speech, depressed mood, blunted affect, and "sad/tired" expression (AR 684, 685). Treatment notes document Plaintiff's reports of worsening, not "improvement," in mood. (AR 684, 685.) In addition, Plaintiff's mental health treatment was not, as the ALJ found, "conservative." Plaintiff was prescribed Sertraline by Dr. Thao. (AR 547. *See also* AR 545, 684–88.) The Ninth Circuit and district courts alike have recognized that prescription of psychiatric medication for mental health impairments—including the same medication prescribed to Plaintiff—is not indicative of conservative treatment. *See, e.g.*, *Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018) ("the ALJ improperly characterized Drawn's treatment as 'limited and conservative' given that she was prescribed a number of psychiatric medications"); *Baker v. Astrue*, No. ED CV 09-01078, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Much treatment of mental disorders involves medication management, and it is unpersuasive to call this 'conservative treatment' . . . Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment."); *Powers v. Kijakazi*, No. 20-CV-01399, 2021 WL 5154115, at *10 (D. Nev. Nov. 4, 2021) (finding prescription medications including Sertraline were not conservative treatment, and the ALJ erred in concluding otherwise).

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154. It is also mindful of the deference desired by the agency in promulgating these revised regulations. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 416.920c(b)(2). Harmonizing this requirement with Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *7 (E.D. Cal. May 17, 2021) (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient

reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do, and therefore the Court declines to find substantial evidence supports the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

Moreover, while Defendant attempts to provide reasons why the ALJ could have found that the limitations opined by Dr. Thao were not supported by with his treatment notes (*see* Doc. 19 at 11–12), this is the sort of post hoc rationale that is impermissible in the Social Security context. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Stout*, 454 F.3d at 1054 (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ); *see also Walker v. Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record. Unfortunately, these are *ad hoc* rationales the Court cannot consider").

**C.    Harmless Error Analysis**

The error of the ALJ's analysis of the persuasiveness of Dr. Thao's opinions is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Here, Dr. Thao opined that Plaintiff would be unable to complete an eight-hour workday for more than five days per month and would have more than five unplanned absences per month (AR 601, 659, 691), whereas the VE testified that a level of ten percent of being off task or absenteeism of one to two days per month would be work preclusive (AR 76–77). The Court therefore cannot "confidently conclude" that "no reasonable ALJ" considering Dr. Thao's opinions could have reached a different disability determination. *See Carter v. Comm'r of Soc. Sec.*, No. 2:24-CV-01177-DGE, 2025 WL 747429, at *10 (W.D. Wash. Mar. 10, 2025) ("These errors were

14

not harmless, as they impacted the RFC formulated by the ALJ.  If Plaintiff's testimony and the opinions of Dr. Craig and Nurse Wong had been credited, the ALJ could not have concluded Plaintiff was able to work.") (internal citations omitted); *David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-MMP, 2024 WL 3596856, at *12 (S.D. Cal. July 31, 2024) (error not harmless where the Court finds the ALJ erred by failing to address adequately the supportability factor when evaluating a medical opinion); *see also Suzi Marie H.*, 2024 WL 965233, at *14 (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

**D.     Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds, and Plaintiff agrees (*see* Doc. 17 at 9), that remand for additional proceedings is necessary because the persuasiveness of the discounted limitations opined by Dr. Thao must be analyzed further before a determination of disability may be made.[6]  *See* 20 C.F.R. § 416.920c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *Arroyo v. Comm'r of Soc. Sec.,* No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *8 (E.D. Cal. June 6, 2023) (remanding for further proceedings where the ALJ failed to explain how a physician's opinion was inconsistent with other objective medical evidence); *Buethe*, 2021 WL 1966202, at *7 (Because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why

---

[6] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to the limitations.  Nor does the Court express what Plaintiff's RFC ultimately should be.  These are for the ALJ to decide.  *Ford*, 950 F.3d at 1154.

these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Yer Vue against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **January 2, 2026**                    /s/ *Sheila K. Oberto*
                                               UNITED STATES MAGISTRATE JUDGE